David A. Devine (AK Bar No. 7906015)
GROH EGGERS, LLC
3201 "C" Street - Suite 400
Anchorage, AK 99503
Phone: (907) 562-6474
Fax:    (907) 562-6044
Email: DevineD@groheggers.com
Attorneys for Defendant Signature Flight Support Corp.

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RICHARD TRZESNIOWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. A 05-181 CV (TMB) |
| ) | |
| SIGNATURE FLIGHT SUPPORT ) | |
| CORPORATION ) | **DEFENDANT'S MOTION FOR** |
| ) | **PARTIAL SUMMARY JUDGMENT** |
| Defendant. ) | **RE: RELIGIOUS DISCRIMINATION** |
| _____ ) | **AND HOSTILE WORK ENVIRONMENT** |

COMES NOW the Defendant, Signature Flight Support Corporation (hereinafter "Signature"), by and through counsel, and moves this Court for a partial summary judgment dismissing with prejudice Plaintiff's causes of action for alleged religious discrimination and hostile work environment. These causes of action should be dismissed as a matter of law for five independent reasons.

First, to the extent the claims are based upon federal law, they are barred by the applicable federal statute of limitations. Second, the state law claims for discrimination and hostile work environment are barred by the 2-year Alaska statute of limitations. Third, Plaintiff cannot show that his employer, Signature Flight Support Corporation,

made any adverse employment decisions based upon the fact that Trzesniowski is a Christian. Fourth, Plaintiff cannot show that similarly situated non-Christian employees were not subjected to same occasional and petty annoyances he says he experienced. Finally, Plaintiff cannot show that a couple isolated incidents of verbal conflict with one or two co-workers amounted to a severe and pervasive hostile work environment. Mr. Trzesniowski is looking for a code of workplace civility where all workers always treat each other with the utmost politeness, but he is misusing this country's discrimination laws to do so. These laws are designed to address serious societal injustices, not to satisfy Trzesniowski's desire to avoid the normal annoyances and petty tribulations of the workplace.

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

# I

## Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material facts. *Id.* at 323-325.

Once the moving party has met this burden, the non-moving party must set forth evidence of specific facts showing the existence of a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-9 (1986). The non-moving party may not rest

upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial. *Id.* The non-moving party makes this showing only by demonstrating that there is "significant, probative evidence tending to support his legal theory." *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979) *quoting First National Bank v. Cities Service Co.*, 391 U.S. 253, 290 (1968).

## II

## FACTS

Trzesniowski worked for Signature Flight Support for approximately ten years, from 1993 to 2003. The last day on which Trzesniowski actually showed up for work was April 14, 2003.[1] See Signature Termination Form, a copy of which is attached hereto as Exhibit A. On July 14, 2003 his at-will employment was terminated for job abandonment. *Id.* and also letter dated July 14, 2003, a copy of which is attached as Exhibit B.

For the first seven years of his employment with Signature, Trzesniowski worked outside on the ramp:

> Q. … as I understand it, you had two different jobs with Signature; is that correct?
>
> A. Maybe three.
>
> Q. What were the three jobs you had?
>
> A. Well, my first three-and-a-half years I fueled aircraft, primarily.

Law Offices of
**GROH EGGERS, LLC**
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

---

[1] Trzesniowski agrees the last day he actually showed up for work was in April 2003, but he believes the date was April 24, 2003. Trzesniowski Depo. at 158.

Q. And then what did you do for Signature?

A. After three-and-a-half years I was asked to become a line – line
   lead supervisor.

Q. And how long did you do that job?

A. Three-and-a-half years.

Q. So that's approximately seven years, then, into your career at
   Signature?

A. Yes, sir.

Q. And then what job did you do?

A. Customer service.

Trzesniowski Depo. at 27, Ex. C hereto.

The reason Trzesniowski transferred to the inside job with customer service was
because he had suffered two on-the-job injuries while performing his outside job. After
the second injury, Trzesniowski's doctors reported that he could no longer perform the
duties required in his job outside on the ramp. Signature then offered Trzesniowski a
new position inside, which he accepted:

Q. Sure. Is it your understanding that after your Workers' Comp
   injuries, your doctors reported that there were some parts of
   your job out on the ramp that you couldn't do anymore?

A. I believe that's probably true.

Q. And it's in response to that that you moved inside to the
   customer representative position; is that correct?

A. That's correct.

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

…

Q. And you accepted the position as customer service representative; is that correct?

A. That's correct.

Trzesniowski Depo. at 132-133, Ex. C hereto.

**The transfer to the inside job in customer service took place in December of 2000.** Trzesniowski Depo. at 136, Ex. C hereto. This date is important as it provides a bright-line delineation between any allegations of discrimination or harassment that occurred with co-workers outside on the ramp and any allegations of discrimination or harassment that occurred when Trzesniowski was working inside in customer service.

Trzesniowski makes two allegations of religious discrimination that he perceived from the conduct of some of his co-workers while he was working outside on the ramp before December of 2000. First, in his Rule 26 Disclosures, Trzesniowski claims that he was teased by co-workers because of his faith-based decision to remain celibate until marriage. Since Mr. Trzesniowski got married in 1996, this teasing took place sometime between 1993 when he went to work for Signature and July 1996 when he got married and was no longer celibate. Trzesniowski Depo. at 177,[2] Ex. C hereto.

The second incident of claimed religious discrimination involved a co-worker out on the ramp by the name of Frank Donaham who did not believe in Jesus Christ and, according to Trzesniowski, *had an attitude*:

---

[2] Trzesniowski says he was also teased, although obviously not for his faith, when his wife left him. His wife left him four months after they were married, which means that event occurred in November of 1996. Trzesniowski Depo. at 148, Ex. C hereto.

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

A. Okay. Let's see what happened. Frank had an attitude. I mean, I can't tell you the attitude. **It was years ago.** I mean –

Q. Yeah, I'm not interested in attitude. What I'm interested in is facts. You know, what did Frank do that belittled your religion?

A. Words spoken. Words spoken.

Q. And what did Frank say that belittled your religion?

A. That he didn't believe it. He didn't believe in Jesus Christ. I said, well, that's fine. That's your business. If you want to believe it, you're free to believe what you want to believe.

He didn't like that. He wanted to argue. I says I don't argue, and I'm not going to controvert. I know what's true and I know what's false. It might take you some time to find that out for yourself, and I'd leave it alone. He'd have an attitude.

I says: Jesus Christ can change your life if you give him a chance. I says just remember that some day down the road when you have trouble.

And then he kind of respected me for that, he was kinder and gentler toward me, because I wasn't trying to convert him. I says: Man, life's a choice, you know, you got a choice here every day and you got a choice, the decisions you make.

We – he – he toned it down a lot. And other guys, I'd just let it roll off my back, it didn't matter. We learn by consequences.

Trzesniowski Depo. at 74-75,[3] Ex. hereto.

Trzesniowski also identifies one incident of alleged religious discrimination that

---

[3] Trzesniowski also complained in his deposition of internet jokes and some pornography (some of the night shift employees were allegedly watching pornographic videos) that occurred during the time he worked the job outside on the ramp before December 2000, although there is no allegation that any of it was directed toward Trzesniowski or that he was singled out in any way because of his faith. Trzesniowski's Complaint does **not** contain any cause of action for sexual discrimination or sexual harassment. Evidently in the summer of 2000, Trzesniowski made an anonymous telephone call to Signature's corporate headquarters in Orlando, Florida to advise them of the pornography in the workplace, at which point the company took action and the pornography was removed. Trzesniowski Depo. at 114-118, Ex. C hereto. Nobody ever accused him of making the anonymous report or threatened him because of it. *Id.*

occurred after he transferred to customer service in December 2000. Trzesniowski was reading a book at work called *Dialogue With God*. Trzesniowski says that one evening while performing a task, he left the book on the counter in the public reception area and "forgot" to pick it up when he went home. The next morning, according to Trzesniowski, he was told by his superiors that the book was "inappropriate for the workplace". Trzesniowski Depo. at 66, Ex. C hereto. Trzesniowski then took the book home. *Id.* at 73. That was all. Trzesniowski was never disciplined, demoted or subjected to any adverse employment decision over the book. The alleged book incident occurred in 2002. *Id.* at 68. Afterwards, Trzesniowski continued to work in the same position for the same pay.

In his deposition, Trzesniowski also identified a one-time incident of alleged sexual harassment that occurred while he was employed as a customer service representative.[4] According to Trzesniowski, he was teased by a co-worker named Juan who accused him of being a "sissy" and doing "a woman's job." *Id.* at 101. The event happened on a weekend while he was covering for another employee and there was no supervisor around at the time. Trzesniowski does not know if Signature's management ever talked to Juan about the incident or disciplined him in any way, but since he never worked with Juan again, there was no repeat of the alleged incident:

> Q. Now, the teasing that was going on, you think that happened on either a Saturday or a Sunday?
>
> A. Yes, it did.

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

---

[4] Trzesniowski has **not** alleged a cause of action for sexual harassment, so this incident is legally irrelevant.

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

Q. And is that why there was no supervisor in the building at the time?

A. Yes.

Q. Do you know if either Joe Oetker or Christian Kirschbaum talked to Juan about the incident?

A. I don't know if they did or not.

Q. Did Juan harass you again after that?

A. I never worked with Juan again.  So, no, I never had the opportunity.

…

Q. So you continued to work for Signature after the incident, but you never had occasion to work with Juan again?

A. No.  And I was probably covering for another employee ….
So I probably was filling in Debbie's spot or somebody's spot, I probably was.  …  I probably was working over there on a Saturday or Sunday.

Trzesniowski Depo. at 108-109, Ex. C hereto.

Trzesniowski himself describes the incident with Juan as "just an incident for the day." *Id.* at 114.  This one-time incident occurred in October of 2002. *Id.* at 109.

None of these isolated incidents, singularly or together, provide Trzesnioski with a cognizable claim of religious discrimination or hostile work environment.

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

# III

# Argument

**A.    Any Claim Based Upon Federal Law is Barred by the Statute of Limitations.**

In Counts III and IV of his Amended Complaint in this case, Plaintiff asserted claims for religious discrimination and an alleged hostile work environment toward his religion.  Although Plaintiff's initial Complaint was based exclusively on state law, his Amended Complaint also alleged, for the first time, discrimination and hostile work environment claims under federal law.  See *e.g.* Amended Complaint, ¶ XXII at 8-9:

> Defendant has discriminated against plaintiff Trzesniowski on the basis of his religion in violation of 42 U.S.C. [§ 2000] e-2(a)(1) and (m).  As a result of which, plaintiff Trzesniowski is entitled to damages in an amount to be proven at trial.

To the extent Trzesniowski is bringing claims for religious discrimination or hostile work environment under Federal law, the timely filing of a claim with the Equal Employment Opportunity Commission ("EEOC") is a necessary precondition to a lawsuit.  The statute of limitations for Title VII requires an employee to file a complaint with the EEOC within 180 days of the unlawful employment practice, except that where the aggrieved person has initiated proceedings with an equivalent state agency, the time to file with the EEOC is increased to 300 days.  42 U.S.C. § 2000e-5(e)(1).  Trzesniowski never filed any complaint with the EEOC, and even his present lawsuit was not filed within 300 days of the actions he now complains about.[5]

---

[5] Plaintiff alleged that his employment was terminated on July 14, 2003.  Amended Complaint, ¶ XI, at 6.  His initial Complaint in state court was filed on July 11, 2005.  See Exhibit A to Defendant's Notice of Removal at Docket 1.  This means **727 days** passed from the date

The limitations period in 42 U.S.C. § 2000e-5(e)(1) "while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks*, 449 U.S. 250, 256-257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). There, since Ricks did not file a complaint with the EEOC within the required time, the Supreme Court concluded that he could not maintain his lawsuit for discrimination.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court continued to hold plainly that a plaintiff must file his or her EEOC complaint within the allotted time or lose the right to sue for the alleged discriminatory act or hostile work environment:

> A discrete retaliatory or discriminatory act "occurred" on the day that it "happened." **A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.**

*Id.*, 536 U.S. at 110, 122 S.Ct. at 2071 (emphasis added).

"Because the limitations period under Title VII operates as a statute of limitations, a claim of discrimination under the Act will not be sustained if it is based on an event or events that occurred more than 300 days before the filing of a charge." *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1107 (9th Cir. 1998). See also *Stepney v. Naperville School District*, 392 F.3d 236, 241 (7th Cir. 2004) (Summary judgment is appropriate when

---

Trzesniowski says he was terminated to the date he filed his lawsuit. This is more than double the time allowed by the federal statute of limitations, especially since the few instances of alleged discrimination all occurred well before Trzesniowski stopped working for Signature.

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

plaintiff cannot demonstrate that he filed a timely EEOC charge).

In this case it doesn't matter whether the appropriate statute of limitations is 180 days or 300 days because Trzesniowski did not meet either deadline. His Amended Complaint is wholly silent on the issue of the necessary EEOC filing because no such filing ever occurred. Because a timely filing with the EEOC is a necessary precondition to a lawsuit alleging discrimination or hostile work environment under federal law, and because Trzesniowski failed to file any complaint within 300 days of the termination of his employment, Trzesniowski's claims for religious discrimination and hostile work environment in violation of federal law must be dismissed with prejudice.

**B.** **Claims Based On State Law Are Also Barred by the Statute of Limitations.**

To the extent Trzesniowski is bringing claims for religious discrimination or hostile work environment under the Alaska Human Rights Act ("AHRA"), such claims are barred because the few discriminatory events alleged by plaintiff all occurred more than two years before this lawsuit was filed.

The Alaska statute of limitations for torts or for actions based upon a statute is two years. AS 09.10.70(a) provides in pertinent part:

> … a person may not bring an action (1) for libel, slander, assault, battery, seduction, or false imprisonment, (2) for personal injury or death, or injury to the rights of another not arising on contract and not specifically provided otherwise, … or (5) upon a liability created by statute … unless the action is commenced with two years of the accrual of the cause of action.

This 2-year statute of limitations applies to claims of discrimination and other

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

violations of the AHRA. *Mahan v. Arctic Catering, Inc.*, 133 P.3d 655, 658 (Alaska 2006); *Russell v. Municipality of Anchorage*, 743 P.2d 372, 374 fn. 8 (Alaska 1987). Thus, if Trzesniowski "knew or should have known that he had a [discrimination] claim more than two years before ... filing his complaint, those claims would be barred by AS 09.10.070." *Sengupta v. University of Alaska*, 21 P.3d 1240, 1249 (Alaska 2001), cert. denied 534 U.S. 1135, 122 S.Ct. 1081, 151 L.Ed.2d 981 (2002). Generally, the date on which the statute of limitations starts to run for a discrimination or harassment claim is "the date that the alleged incident occurs" which means that such a claim is "limited to acts occurring within the two years preceding [the] filing [of the complaint.]" *Mahan*, 133 P.3d at 658.

As set forth in the Facts section of this motion, the isolated instances of alleged discrimination or harassment all occurred more than two years before the Complaint was filed. The last incident that Trzesniowski describes occurred in October 2002, and other alleged incidents occurred much earlier - even in the mid-1990s. Trzesniowski did not file his initial Complaint in state court until July 11, 2005, which means any act of alleged discrimination or harassment occurring before July 11, 2003 is barred. Even Trzesniowski admits that the last day he actually showed up for work was in April 2003,[6] which means there is no discrimination claim he can assert that could possibly be within the statute of limitations.

Because Trzesniowski failed to file his Complaint within two years of any of the alleged acts of discrimination or hostile work environment, all his claims for religious

Law Offices of
**GROH EGGERS, LLC**
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

---

[6] Trzesniowski Depo. at 158-159, Ex. C hereto.

discrimination and hostile work environment must be dismissed with prejudice.

## C.    Plaintiff Cannot Establish a Prima Facie Case of Discrimination.

Trzesniowski's allegations of religious discrimination also fail to state a prima facie case under either state or federal law.  Like its federal counterpart, the Alaska Human Rights Act prohibits discrimination based on religion.  AS 18.80.220(a)(1) provides in pertinent part that "it is unlawful for an employer to refuse employment to a person, or to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment because of the person's … religion …."

To state a prima facie case of disparate treatment (*i.e.* discrimination) under either Title VII or the AHRA, Trzesniowski must establish that: (1) he belongs to a protected class, (2) he was performing his job according to the legitimate expectations of his employer, (3) he was adversely affected by an employment decision, and (4) persons outside the protected class were treated more favorably than he was.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973); *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

To establish religious discrimination based upon an alleged failure to accommodate, the employee "must first set forth a prima facie case that (1) he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirements."  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004);

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

see also *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 830 (9th Cir. 1999); *Tiano v. Dillard Department Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998); *Opuku-Boateng v. State of California*, 95 F.3d 1461, 1467 fn 9 (9th Cir. 1996).

   1.   ***Trzesniowski Has Not Shown Any Conflict with an Employment Duty.***

   Assuming that Trzesniowski is indeed a devout Christian, he has failed to allege any **employment duty** he had while working for Signature **that conflicted with his religious beliefs**.  He certainly never advised Signature of any such belief and conflict.  Therefore, Trzesniowski is wholly unable to sustain either of the first two elements of a religious discrimination claim, and the claim must therefore be dismissed.

   2.   ***Trzesniowski Did Not Suffer an Adverse Employment Decision.***

   The third element of a religious discrimination in employment case is that the employer either threaten or actually subject to the employee to discriminatory treatment, including discharge, **because of his inability to fulfill the job requirements due to a conflicting religious belief**.  *Sutton*, 192 F.3d at 830; *Tiano*, 139 F.3d at 681; *Opuku-Boateng*, 95 F.3d at 1467 fn 9.  There is no allegation whatsoever that Trzesniowski was subjected to an adverse employment decision *because of an inability to fulfill job requirements due to a conflicting religious belief*.  Trzesniowski has identified no job requirement he could not perform, let alone one he couldn't perform due to a conflicting religious belief.

   Further, the few annoyances that Trzesniowski complains about, even if true, would not amount to a discriminatory adverse employment action by his employer.  In defining

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

"adverse employment action" in the retaliation context, the Ninth Circuit has aligned itself with cases from the First, Seventh, Tenth, Eleventh, and District of Columbia Circuit Courts of Appeal. *Ray v. Henderson*, 217 F.3d 1234, 1241 (2000).[7] It is thus appropriate in the disparate treatment context to look to cases from those jurisdictions in determining what constitutes an adverse employment action in a discrimination case.

In *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), the plaintiff alleged several discriminatory actions, including involuntary reassignment, a less than excellent performance evaluation, failure to promote, and not providing her with a letter of reemployment when she accepted a temporary political position. The D.C. Circuit Court of Appeals held that none of these actions amounted to an adverse employment decision to support her disparate treatment claim. *Id.* at 456-58.

The Seventh Circuit, in *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106 (1998) also considered what constitutes an adverse employment action in a discrimination case. There the plaintiff was reassigned involuntarily within the company, but received similar pay, kept the same supervisory authority, and kept the same office space. The court noted that this involuntary transfer could not constitute an adverse employment decision. *Id.* at 1112 n.7. The court stated:

> Under our precedent, a materially adverse change in the terms and conditions of employment must be more disruptive than a mere

---

[7] *Ray* held in the retaliation context that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from **engaging in protected activity**." 217 F.3d at 1243 (emphasis added). This definition is not suitable in the disparate treatment context because "engaging in a protected activity" is an element of a retaliation claim, *id.* at 1240, but is not an element of a disparate treatment claim. *See McDonnell Douglas*, 411 U.S. at 802.

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

> inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. **Not everything that makes an employee unhappy is an actionable adverse action.**

*Id.* (emphasis added).

Trzesniowski was not terminated, demoted, subjected to a decrease in salary, or subjected to a material loss of benefits in connection with any of the events he describes as religious discrimination. He was employed at the same job, with the same title, with the same pay and benefits after each of the incidents he described. Since Signature did not materially change Trzesniowski's job, pay or benefits, Trzesniowski cannot establish an adverse employment action. Thus, he cannot establish a critical element of a discrimination claim.

The real motivation behind these claims of discrimination is the fact that Trzesniowski is a man to whom "politeness" is critically important, and he is looking for a code of civility wherever he can find one:

> Q. I get the impression from this deposition that it's important to you that people be polite, is that fair to say?
>
> A. Well, of course. That's the way you're going to get along in this world.

Trzesniowski Depo. at 61, Ex. C hereto. In fact, Trzesniowski describes his current employment in Alamogordo, New Mexico as "the perfect job" for him because the people he works with are "[v]ery polite and respectful." Trzesniowski Depo. at 26, Ex. C hereto.

However, the Supreme Court has made it clear that the laws against discrimination are not some sort of "general civility code" for the workplace. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). For that reason, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations and quotations omitted). Whatever offhand comments a co-worker may have occasionally made to Trzesniowski were simply the "ordinary tribulations of the workplace" that the Supreme Court has said are not actionable. *Id.* at 788 (citations and quotations omitted).

Trzesniowski's small handful of allegations all fall into the category of mere inconveniences or annoyances, and because there was no actual adverse employment decision by Signature, these alleged annoyances do not form the basis of a cognizable religious discrimination claim. This country's discrimination laws are designed to address serious and real societal injustices, and Trzesniowski is grossly misusing those laws here in an attempt to remedy a couple petty grievances with one or two of his co-workers.

### 3. *Trzesniowski Cannot Show That Similarly Situated Non-Christians Were Treated More Favorably Than He Was.*

Another generally required element of a *discrimination* claim is a showing that similarly situated employees outside the protected class (i.e. in this case non-Christians) were treated more favorably than the plaintiff was. *McDonnell Douglas Corp.*, 411 U.S. at 803; *Hewlett-Packard Co.*, 358 F.3d at 603. As noted above, Trzesniowski alleges a couple of annoying interactions with one or two of his co-workers. But even assuming these

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

conversations happened as Trzesniowski remembers them, he is completely unable to show that similarly situated non-Christians did not experience similarly annoying interactions with some of their co-workers, including Trzesniowski.

It is not enough for Trzesniowski to show merely that annoying things happened to him from time to time; because his claim is *discrimination*, he must also show that similarly annoying things did *not* happen to similarly situated non-Christian employees. *Bodett v. Coxcom, Inc.*, 366 F.3d 736, 743-744 (9th Cir. 2004). Trzesniowski cannot meet this burden, and thus he cannot make out a prima facie case of religious discrimination based on the incidents he describes. Indeed, Trzesniowski cannot even say how other Christians were treated at Signature:

> Q. And how were they [other Christians] treated?
>
> A. I don't know. I never discussed it with them or asked them … how -- how are you getting along at work with your faith? I just never asked him.

Trzesniowski Depo. at 76, Ex. C hereto.

A plaintiff alleging discrimination cannot avoid summary judgment "based on nothing more than the claimant's 'unsupported assumptions and speculation.'" *Mahan*, 133 P.3d at 661. A claimant's "subjective opinion that [he] had been treated unfairly" without "solid evidence to show that [he] actually received unusually" unfair and discriminatory treatment in a term or condition of employment is not enough to defeat a motion for summary judgment. *Id.* Indeed, a summary judgment is warranted and proper where a plaintiff "described no concrete examples of conduct by [his employer] to

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

substantiate [his] perception that [he] received more work than other [employees]; and [he] presented no other factual information tending to show that other [employees] got better treatment." *Id.*

### D.    There is No Prima Facie Case of a Hostile Work Environment.

In order to prevail on his religiously motivated hostile work environment claim, the discriminatory behavior that Trzesniowski complains about "must be sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146-147, 124 S.Ct. 2342, 2354, 159 L.Ed.2d 204 (2004) (citations omitted).  Or as the Ninth Circuit phrased it, Trzesniowski "must show that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (internal citations and quotations omitted).  Alaska law is the same.  "[D]iscriminatory behavior sufficiently severe or pervasive to alter the conditions of the victim's employment and to create a discriminatory hostile work environment violates AS 18.80.220."  *VECO, Inc. v. Rosebrock*, 970 P.2d 906, 915-16 (Alaska 1999). The few isolated acts of which Trzesniowski complains were not severe and pervasive, did not alter the conditions of his employment, and did not rise to the level of a legally cognizable abusive work environment resulting from religious discrimination.

Moreover, in a case alleging harassment by **co-workers**, as Trzesniowski alleges here, an employer may only be found liable "for what management-level employees 'knew

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

or should have known.'" *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir. 1999).

The United States Supreme Court has cautioned that hostile work environment claims are not a "general civility code" for the workplace. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). Rather, conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment" in order to be actionable. *Id.* at 81 *quoting Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). To that end, the Supreme Court has held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations and quotations omitted).

Heeding the Supreme Court's warning, the Ninth Circuit in *Brooks* discussed a sexually based hostile work environment claim and held that a single incident where a supervisor reached up a female employee's blouse and under her bra did not constitute a hostile work environment where the employer immediately removed the supervisor from the workforce and ultimately terminated his employment. 229 F.3d at 926-27. The Ninth Circuit has also held that, where over a period of days a supervisor called a female subordinate a "castrating bitch", "Madonna", and other sexual insults, the offensive environment did not amount to a change in the terms and conditions of employment. *Kortan v. California Youth Authority*, 217 F.3d 1104 (2000).

Trzesniowski alleges nothing so pervasive or severe as to alter the terms and conditions of his employment. In fact, Trzesniowski alleges no discriminatory treatment at

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

all on the part of his employer.  The Signature person Trzesniowski dealt with regarding his

failure to return to work and his termination for job abandonment was Kim Cleeves, and she

never said anything to Trzesniowski about religion:

> Q. All right.  How about Kim Cleeves, was she anti-religious towards you?
>
> A. I don't know.
>
> Q. Did she make any comments to you that you thought she was belittling your religion?
>
> A. No.  I don't remember.  I don't think so.

Trzesniowski Depo. at 66, Ex. C hereto.  Indeed, the only negative thing Trzesniowski could

find to say about Kim Cleeves was that "she arrogantly and presumptuously smoked at will

in the building" and he didn't like it.  *Id.* at 64.

When all the hyperbole is stripped away, Trzesniowski only complains of a few

isolated incidents with a couple of his co-workers over a span of ten years.  These amount to

no more than the "offhand comments" and "isolated incidents" that the Supreme Court in

*Faragher* said do not amount to actionable hostile work environment claims.  Trzesniowski

was never subjected to any illegal discriminatory conduct that was sufficiently severe or

pervasive as to change the terms and conditions of his employment.  Any offhand comments

by his co-workers, even if motivated by religion (which appears highly doubtful), were

simply the "ordinary tribulations of the workplace" that the Supreme Court has said are not

actionable.  *Faragher*, 524 U.S. at 788 (citations and quotations omitted).  Therefore,

Trzesniowski's claims of religious discrimination resulting in a hostile work environment

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044

should be dismissed.

**IV**

**Conclusion**

Trzesniowski's employment with Signature ended when he left work and never returned. **Three months** after he last reported for work, Trzesniowski was terminated for job abandonment, not for some unwillingness to perform a job duty he felt conflicted with his religious beliefs. For all the foregoing reasons, Counts III and IV of Plaintiff's Amended Complaint, which allege claims of religious discrimination and hostile work environment, should be dismissed with prejudice.

Dated at Anchorage, Alaska this 3rd day of October, 2006.

GROH EGGERS, LLC

Attorneys for Defendant Signature

By: s/ David A. Devine
      David A. Devine (AK Bar No. 7906015)
      GROH EGGERS, LLC
      3201 C Street, Suite 400
      Anchorage, AK 99503
      Phone: (907) 562-6474
      Fax: (907) 562-6044
      E-Mail: devined@groheggers.com

I HEREBY CERTIFY that on October 3, 2006,
a copy of the foregoing was served by **first class mail** on:

Hal P. Gazaway, Esq.
8620 Boundary Avenue
Anchorage, AK  99504

Attorney for Plaintiff

 s/  David A. Devine     .

Law Offices of
GROH EGGERS, LLC
3201 C Street, Suite 400
Anchorage, Alaska 99503
Phone (907) 562-6474
Fax (907) 562-6044